Metropolitan Police Department, Department Officer, Mr. Ness for the appellant, Ms. Jennifer Gamble-Lee. Mr. Ness, good morning. May it please the Court? In May of 2013, responding to a 911 call and other reports of verbal threats, Officer Gelsomino approached Ms. Richards, and she only wanted to know one thing. Where were you born? Ms. Richards said, I'm a U.S. citizen. And Officer Gelsomino pushed, where were you born? Ms. Richards said, Jamaica. And Officer Gelsomino immediately arrested her. The trial court erred in this case by granting summary judgment to Officer Gelsomino on Ms. Richards' Fifth and Fourth Amendment claims. First, the district court erred in concluding that Richards provided no direct evidence of discrimination in violation of the Fifth Amendment. Second, the district court erred in concluding that there are no disputed issues of material fact concerning whether there was probable cause in violation of the Fourth Amendment. Turning to Ms. Richards' Fifth Amendment claim, the equal protection component of the Fifth Amendment prohibits the selective enforcement of the law based on considerations such as race and national origin. To defeat summary judgment on her equal protection claim, Ms. Richards proffered direct evidence of discriminatory effect and purpose. Direct evidence is evidence that on its face demonstrates an improper criterion served as a basis for the adverse action. A comment's proximity to the challenged decision is a factor in determining whether a comment is direct evidence of discrimination. Here, there is direct evidence in the record that national origin was a motivating factor in Officer Gelsomino's decision to arrest Ms. Richards. First, when she approached Ms. Richards, she only wanted to know one thing before she arrested her. Where were you born? Her national origin. That question was wholly irrelevant to the investigation, and it was the only question she asked Ms. Richards. She asked it multiple times. Is there any evidence that Richards was, before the officer asked that question, that Richards had been speaking to the other officer? Wasn't there another officer that interviewed her? There was another officer that spoke with Ms. Richards, Officer Alas. There's no evidence in the record, particularly for Fifth Amendment purposes, that Officer Alas or Officer Gelsomino ever communicated to each other, or that he in some way communicated to Ms. Richards. I read someplace that I may be misremembering that somebody was speaking Jamaican. Is there a language, a Jamaican language? I'm not sure if there's a Jamaican language, but there is certainly evidence in the record you're correct. In an OPC investigation, Mr. Richards had written a statement where he said, I don't know how Officer Gelsomino could say certain things because I was only speaking to, or Ruth was only, Ms. Richards was only speaking in Jamaican. But there's no testimony in the record that Officer Gelsomino ever heard that, or that she in any way... Well, if she heard the individual, or Ms. Richards, talking, it might have occurred to her that, gee, I'm not really understanding what you're saying, where were you born? And to give a clue about what the inflection is, or the accent, or what she was saying, I mean, that's entirely possible. There's no evidence in the record of that. There's only evidence in the record that Officer Gelsomino approached Ms. Richards and asked her where she was born. And even if it is... Well, there's no evidence in the record except by inference about why she asked the question. Even if she had overheard... Actually, there is. Didn't Officer Richards say that the reason she asked the question is because I had to fill in the arrest form that required me to ask national origin? So I have two responses. The first response to the point about her speaking Jamaican. Even if Officer Gelsomino overheard her speaking what she thought was Jamaican, the question... This is not a magic words case. We're not saying because she asked her where she was born that that is the constitutional violation. The constitutional violation is when you arrest someone because of where they were born. And here, by asking Ms. Richards where she was born, she clearly wanted to know. And then she immediately made an arrest following that. Her defense, her factual defense is that, well, I had to fill out a post-arrest booking form. But that fails, at least as a jury argument, for four separate reasons. First, that's a post-arrest booking form. You can't ask someone where they were born before you make an arrest to fill out a post-arrest booking form. Why not? Well, first of all, the MPD regulations forbid that. You're talking about the Constitution. No, the MPD regulations. You're mounting a constitutional claim. So why can't they ask the question before they arrest the person? Again, the issue is not that she can't ask the question for constitutional purposes. Her defense is that I had to ask that question because I was required to. But a jury could find that that's not true because, one, the regulation says you can't do that. Second, it's the only question she asked. She didn't ask what her name is. She didn't ask her height, her weight, her race. All of those pieces of information are on the form. Just look at her. You can tell what her height and weight are. I'm not sure that that's true, Your Honor. But in any event, the form that was filled out does not contain Ms. Richards' national origin. So if the whole point of asking was to put it on the form, since the form is filled out, you would assume that she would write Jamaica in there. It was the only thing she cared about. It was the only thing she asked about, and that's not on there. What is the legal test that you think we should be using to determine discriminatory effect? The discriminatory effect is, again, the test would be whether there's direct evidence. And direct evidence is evidence that, on its face, demonstrates an improper criterion served as a basis for the adverse action. Don't you have to show disparate treatment? You do not have to show disparate treatment if you have direct evidence. Otherwise, we would be opening the door in selective enforcement cases where someone could come up to you and say, what's your race, and based on that saying, this is the only time I'm going to do it, but I'm going to arrest you because you're black. And that would not be a constitutional violation if you have to show disparate treatment of other people. There are an entire line of cases that say a class of one discrimination is discrimination under the Equal Protection Clause, but it is true that it is difficult to show direct evidence of discrimination. So if simply asking that question is direct evidence of discrimination, then it is a kind of magic words test. It's not that that was the question that was asked. It was Officer Gelsomino's immediate response to the answer. When she asked where you were born, and it was the only thing that she cared about, when she immediately arrested her afterwards, a reasonable inference a jury could draw was the reason that she was asking was she wanted to selectively enforce the law, and when she got the answer that was she wasn't born in America, she was born in a foreign country, I decided to exercise my discretion to arrest. Let me ask you, it seems like a bizarre question to ask, unless, and I know the record doesn't show this, I believe the officer refused to make statements during the police investigation, but I'm supposing that someone said if there was more than one person on this porch, she's the Jamaican one. We don't have any evidence of that, and as far as I can tell she was the only one on the porch next door. That's correct, Your Honor. There's no evidence that Officer Gelsomino was using her national origin to identify her as a suspect. Okay, looking at Judge Boasberg's really critical statement, the general question, where were you born, is not on its face discriminatory on the basis of race or national origin. Do you have a problem with that? I do, Your Honor, because it's not that the question on its face is discriminatory, the question is does the question on its face mean that an improper criterion was being applied. So it's context that matters. In other words, you would disagree that you can't say on its face whether it's discriminatory or not. You have to know the context. That's what I think your argument is. Is that right? I would certainly agree with that. So you would disagree with his next statement, which is hence it is not direct evidence of discrimination. That's correct. I believe the following sentence in Judge Bates's order is that Ms. Richards, I'm sorry, Officer Gelsomino did not admit she was arresting on the basis of race or national origin, and I certainly don't believe that is the test. I have a question about your Fourth Amendment claim. Yes. How do you square your claim with the Supreme Court's recent decision in Westby? So I think the Supreme Court's decision certainly says that the main tenets of our argument remain the same, which is you have to have a reasonable belief in the truth of the allegations that are being told to you as a police officer. If you don't have reasonably truthful information, you cannot make an arrest. The second point would be that you do have to do a reasonable investigation once you've received allegations. And then finally, a material omission to law enforcement will be considered or should be considered lying to law enforcement for purposes of credibility determinations, and that was stated in the Omoby case from the circuit, that when you omit material information to law enforcement, that is a problem for your credibility. And at the point that Officer Gelsomino interviewed other witnesses, including Ms. Johnson, and found out there was much more to the context of this domestic dispute than she originally learned, then under the Hall case in this circuit, for example, she would have a requirement to at least go back and ask some basic follow-up questions. For those reasons, Your Honor, we would request that the Court reverse and remand. All right. Thank you. Ms. Pittman. Thank you. Good morning. May it please the Court, I'm Lucy Pittman on behalf of Officer Jennifer Gelsomino. The district court correctly entered judgment in this case for the officer on both the Fourth and the Fifth Amendment. I'm going to start with the Fourth Amendment where my colleague had ended. Here, there was certainly probable cause to arrest Ms. Richards for making threats to Ms. Grady. As we know, probable cause is an objective standard. You take a look at what a reasonable officer on the scene, and you don't look at it with hindsight. It's not a high bar. That's what the court in Westby reminded us of. Here, the facts and circumstances are that Officer Gelsomino got a dispatch report of a 911 call, priority one, meaning arrive as quickly as possible, because there was someone who was making threats to commit bodily harm, and that suspect remained on the scene. Officer Gelsomino arrived on the scene, and she interviewed the victim and the eyewitness. Case law makes clear that you can rely on statements from a victim or an eyewitness. In this case, you had both, and that you do not have to test the reliability, but instead you can't ignore if there's material or apparent problems. There were no material or apparent problems with the statements that they made. They explained that Ms. Richards got into Ms. Grady's face, used profanity, and threatened to harm her, and Ms. Grady believed this. Would your argument be any different if the officer also knew that her former husband slapped her? I don't think so, and I think our brief addresses that, which is that that information does come out later, and that doesn't negate the probable cause as to Ms. Richards threatening Ms. Grady. The fact that there were two crimes here with Mr. Richards having allegedly assaulted Ms. Richards doesn't then excuse, and I disagree with Ms. Richards' argument that that somehow excuses her threats to Ms. Grady, or that they're in some way in self-defense. Ms. Grady, it's undisputed, was not involved in the argument between the Richards. Is it correct that the eyewitness who came voluntarily to the police, said, I saw the whole thing, indicated that she didn't hear anything? I don't know if she said it on the scene, but certainly with her interview to the Office of Police Complaints, she confirmed that she heard them arguing, the Richards, but she could not hear what they were saying. And it is undisputed that Ms. Richards was yelling. I believe the reference to speaking in Jamaican was in her interrogatory responses. She indicated that while she was yelling at Mr. Richards. I don't know exactly what that means, but that does come from her interrogatory responses. So here, where we've got probable cause to effectuate the arrest, the district court correctly held that there was no Fourth Amendment violation. And I will move to the Fifth Amendment, unless there are questions further on the Fourth. Okay, so the Fifth Amendment issue, the district court also found that there was insufficient evidence here to find that the arrest was for a discriminatory effect or discriminatory purpose. That is what has to be established here, that the arrest was for some discriminatory reason. The normal way in which you have evidence of discriminatory effect is you have a comparator, a similarly situated individual who was not in the class, who was not arrested. Ms. Richards concedes she does not have that. Data would be another way to show that one class is treated differently than another, and Ms. Richards also concedes that she does not have that. Instead, she is trying to move on the evidence of a sole question. And we heard in a prior argument that the question itself on its face is not discriminatory. I think that right there makes this fatal for a direct evidence claim. Direct evidence means that you establish the elements, discriminatory effect and intent, without need for further inference or presumption. And here, Ms. Richards is asking for everyone to speculate, to speculate that the question had something to do with national origin, number one, and number two, that the answer had any sort of factor in the issue of whether or not to arrest. And here we simply have no evidence. Has Ms. Jill Cimino anywhere said why she asked the question? Excuse me, Your Honor. Yes, she explained in her deposition testimony that these are questions that are on the arrest form. And that she was asking these questions. I believe it's disputed as to whether she continued to ask additional questions in the car on transport. But I think, as you pointed out earlier, Judge Henderson, the fact that it's kind of an awkward question or that it's clumsily in how it was asked before the handcuffs were placed on, it doesn't make it a constitutional violation. You still have to have some sort of evidence that the question and the answer was then the motive for the reason for the arrest. And here, context is everything. We have probable cause for an arrest. She just got information. Officer Gelson had just gotten information from a victim and an eyewitness that Ms. Richards got into the face of Ms. Grady and made threats to commit bodily harm. Threats that were believed. And so the awkwardness of the question, particularly when it's been conceded that on its face it's not discriminatory, is simply not enough for direct evidence. And I think the case law that we cite in our briefs shows that when you have direct evidence, it has to be something really significant. It has to be derogatory. It has to be a direct connection. I think in the reply brief they cite to an arrest. Do you think we should use the evidentiary standards from U.S. v. Armstrong, the evidentiary standards for a selective prosecution? Should those be the standards used in the selective arrest case? Certainly I think that Armstrong sets forth the discriminatory effect and discriminatory intent are the things that you're looking for. They are the standard equal protection test. And Armstrong and in other cases they discuss that you do look for the similarly situated comparator or data. I don't know that Armstrong refers to data specifically, but some other cases do. I know that a question came up in the briefing about the difference between arrests and prosecution, but we have to remember that Armstrong and I think it was Sellers are both discovery cases. We're not in that discovery phase. We're at summary judgment. Discovery has already occurred, and I would assume that if there was a similarly situated comparator or if there was data, that's what Ms. Richards would be using. And so I do think that Armstrong is relevant in that way, and here we just simply do not have the evidence of either discriminatory effect or discriminatory purpose. The two Richards were charged with criminal offenses, right? Yes. Did they invoke their Fifth Amendment privilege in response to requests for depositions? They did not, although my understanding is that both charges had been dropped before this lawsuit was filed. I know, but they still have the Fifth Amendment privilege, right? I realize that, but I don't see, although- Were they deposed? There's another way to answer that. Right. Ms. Richards was, I don't recall seeing in this record if Mr. Richards was, but he did give a statement to the Office of Police Complaints. So unless there are any other questions. All right. Thank you. Thank you. Does Mr. Ness have any time left? Mr. Ness does not have any time left. All right. Why don't you take a couple minutes? All right. If you'd like to take a couple minutes and reply. I'd like to briefly address two points. The first is the issue about the question and whether it's discriminatory on its face. It's not clear exactly what that means, but the question is, did Officer Gelsomino arrest Ms. Richards because of her national origin? As opposed to because she had probable cause. Exactly. That is what selective enforcement at its core is. I have probable cause, but I will not arrest you if you're born in America, and I will arrest you if you're born outside of America. That is selective enforcement. How better to prove somebody was being selectively enforced? Well, Mr. Richards was born in Jamaica, and she didn't arrest him. She did arrest – well, Mr. Richards was arrested. Right away. But Mr. Richards was arrested right away when there was an allegation that he had committed a crime. But, again, the issue is not that she simply walked over and wanted to arrest the Jamaican. The question is whether she applied a criterion before she made the arrest. Put it into a different context. Let's talk about an employment context. If someone's sitting and they're about to be terminated, and before they're terminated someone asks, are you pregnant? And they answer, yes, you're fired. That would be on its face direct evidence that the reason for the termination was the answer to the question. Is the question, are you pregnant, on its face discriminatory? No. It's the context, and it's the result that happens immediately after. And, again, we did not move for summary judgment asking for a judgment as a matter of law. We are simply saying these are all jury issues that have to be resolved. I'm not sure that's a good analogy because the pregnant employee would have been brought in for some other reason, stealing, being late, or something like that. Like the probable cause here, and then that question was asked and she was fired. Well, it would be, in that case it would be a mixed motive. The question would be whether or not someone was making a decision, at least in part, on pregnancy. But even if we keep it to the facts of this case, it was a sole question that Officer Gelsomino wanted, and a jury could easily reject her argument. It's just a factual argument that I was going to fill out a form. But there are numerous reasons, including that the Metropolitan Police Department rejected that. They put in their dereliction of duty notice, you were supposed to put it in the form if you were asking that question and you didn't. So, as a factual matter, a jury could reject those arguments. All right. Thank you. Thank you.
judges: Henderson, Rao, Randolph